FILED

FEB 18 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CAUSE NO: 20-CR-173 (RP) |
| MILAN DIMITROV | § § § | |

## ORDER OF REMOVAL

Defendant **MILAN DIMITROV** and the United States of America (hereinafter referred to as "the Government") have jointly requested and stipulated to entry of a stipulated judicial Order of Removal, pursuant to Title 8, United States Code, Section 1228(c)(5), Section 238(c)(5) of the Immigration and Nationality Act.

Pursuant to that stipulated request, the Court finds the following:

1. Defendant waived the right to notice and a hearing prior to removal from the United States.

2. The Court should enter a judicial order that defendant be removed from the United States to Bulgaria.

3. The facts in support of this request are as follows:

    a. Defendant is not a citizen or national of the United States;

    b. Defendant is a native and citizen of Bulgaria;

    c. Defendant is subject to removal from the United States;

    d. Defendant is not entitled to acquired or derivative citizenship;

e. Defendant did:

Beginning sometime in or about May of 2014, the exact date being unknown, and continuing until on or about May 30, 2018, in the Western District of Texas and elsewhere, the Defendants,

**ILIAS SABIROV,
DIMITAR DIMITROV,
MILAN DIMITROV,**

did knowingly and willfully combine, conspire, and agree to violate, or cause a violation of, a license, order, regulation, and prohibition of U.S. export controls, as described above, in violation of 50 U.S.C. §§ 1705(a), 1705(c), and 1702.

More particularly, Defendant willfully and knowingly conspired with co-conspirators Ilias SABIROV and Dimitar DIMITROV ("D. DIMITROV") to export and cause the export of goods from the United States to Russia via Bulgaria without the licenses required by United States law. Starting in or around August 2014, Defendant worked at a Bulgarian company known as Multi Technology Integration Group EOOD ("MTIG"). MTIG was created in Bulgaria to enable the Russian companies OOO Sovtest Comp ("Sovtest") and Cosmos Complect ("Cosmos") to acquire U.S.-origin radiation-hardened and high-temperature electronic circuits from a company based in Austin, Texas ("U.S. Supplier 1" in the Indictment) after export controls imposed in the wake of Russia's 2014 invasion of Crimea made it illegal to export those goods directly to Russia without a license from the Department of Commerce, Bureau of Industry and Security.

U.S. Supplier 1 sold 16Mb SRAM Wafers that were designated by the Department of Commerce under Export Control Classification Number 9A515.e.1 (Category: Spacecraft and related components) based on their radiation and temperature-hardened characteristics. At all times relevant to the Indictment and Defendant's conduct, an export license was required to export the SRAM wafers and SRAM wafers cut into individually integrated circuits to Russia.

In May 2014, SABIROV, D. DIMITROV, and an employee of U.S. Supplier 1 met in Austin, Texas to discuss the purchase of U.S. Supplier 1's integrated circuits for use by Cosmos. In May 2014, SABIROV and D. DIMITROV were informed that U.S. Supplier 1 could not ship electronic components to Russia because of U.S. trade restrictions. In late August 2014, SABIROV informed U.S. Supplier 1 that he, D. DIMITROV, and Defendant's wife had established a new company called MTIG in Bulgaria that would purportedly receive U.S. Supplier 1's integrated circuits and manufacture products using them. After additional negotiations, U.S. Supplier 1 shipped 16mB SRAM Wafers that MTIG received in Bulgaria on or about January 31, 2015. On or about March 2, 2015, MTIG entered into a written contract with Sovtest for MTIG to deliver these parts to Sovtest in Russia. In three payments on or about March 20, April 17, and May 14, 2015, Sovtest transferred over $1 million to MTIG.

On or about May 20, 2015, MTIG issued an invoice to Sovtest in the amount of $158,125 for the sale of U.S. Supplier 1's parts to the Russian company. MTIG thereafter shipped the parts to Sovtest in Russia in violation of U.S. export control laws, specifically the Export Administration Regulations and the International Emergency Economic Powers Act.

Defendant knew at the time that U.S. Supplier 1's parts were shipped from the U.S. to Bulgaria and then to Russia. Defendant knew that SABIROV was in charge at MTIG, setting up deals with U.S. Supplier 1 (and other companies) on MTIG's behalf, negotiating prices and payment terms, and approving transactions. Defendant knew that SABIROV and his companies were MTIG's source of operating capital and revenue. Thus, the purpose of MTIG's procurement of U.S. Supplier 1's parts was to obtain them for the benefit of SABIROV and his companies in Russia. Defendant knew that MTIG was started by SABIROV and D. DIMITROV in an effort to evade U.S. export control regulations and laws. Defendant facilitated the illegal activity as an employee of MTIG and close associate of SABIROV. Defendant received a salary as an employee of MTIG and benefitted from the scheme.

Additionally, on or about December 6, 2018, a Department of Commerce Export Control Officer interviewed Defendant during a Post-Shipment Verification visit at MTIG in Bulgaria. A Post-Shipment Verification visit allows U.S. officials to check whether controlled items shipped outside the United States have been used in accordance with U.S. export control laws. The purpose of this visit was to determine whether the radiation-hardened wafers exported by U.S. Supplier 1 starting on or about January 31, 2015, were still in MTIG's possession. In response to a series of questions related to the purchase of the SRAM wafers, Defendant willfully and falsely denied that all of the wafers were still at MTIG when he knew that one set of U.S. Supplier 1's wafers had been shipped to Russia by MTIG. He falsely stated that the "wafers are not in Russia." During the interview, Defendant further falsely stated that he and his brother founded MTIG in 2014 when he knew then and there that SABIROV was involved in the creation of MTIG. He further willfully omitted SABIROV's involvement in MTIG, including SABIROV's active role in directing MTIG's procurement activities from the U.S. Defendant thus made material misstatements during the Post-Shipment Verification visit.

Defendant thus admits that he did knowingly and willfully conspire with others to violate, or cause a violation of, a license, order, regulation, and prohibition of U.S. export control laws, in violation of the International Emergency Economic Powers Act.

Defendant's attorney has fully explained to Defendant his right to be represented by an

attorney before an Immigration Judge, to request a removal hearing before an

Immigration Judge, and to apply for relief from removal.

4. Defendant understood and knowingly, voluntarily, and willingly waived his rights to be represented by an attorney before an Immigration Judge, and to apply for relief from removal political asylum. Defendant further knowingly, voluntarily, and willingly waived his right to a hearing before an Immigration Judge, or any other authority under the Immigration and Nationality Act, on the question of his removability from the United States. In this regard, Defendant understood and knowingly, voluntarily, and willingly waived his rights to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the government.

5. Defendant has knowingly, voluntarily, and willingly agreed that all factual allegations contained in the Plea Agreement and in this Order of Removal are true and correct.

6. Defendant has knowingly, voluntarily, and willingly, conceded that he is removable from the United States and is not entitled to acquired or derivative citizenship.

7. Defendant has knowingly, voluntarily, and willingly agreed and stipulated to accept an Order of Removal knowing that it will result in his immediate removal from the United States upon completion of any period of incarceration. Defendant has agreed that the order be issued for his deportation to Bulgaria or to any other country as prescribed by the immigration laws and regulation of the United States.

8. Defendant has knowingly, voluntarily, and willingly waived any and all rights to appeal, reopen, or challenge in any way the Order of Removal.

9. Defendant has knowingly, voluntarily, and willingly agreed with the United States as a condition of his plea agreement to entry of a judicial Order of Removal.

Therefore, IT IS ORDERED pursuant to Title 8, United States Code, Sections 1182(a)(6)(A)(i), 1227(a)(1)&(2) and 1228(c)(5) that defendant be removed from the United States to Bulgaria or to any other country as prescribed by the immigration laws and regulation of the United States and that promptly upon his release from confinement, United States Immigration and Customs Enforcement shall execute this ORDER of Removal according to the applicable laws and regulations of the United States.

ENTERED on this __18th__ day of __February__, 2026

_____
ROBERT PITMAN
United States District Judge

## CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: MAIL [ ]     PERSONAL SERVICE [✓]

TO:   [✓] ALIEN     [ ] ALIEN c/o Custodial Officer

| RIGHT THUMB | Defendant's Signature |
|---|---|
|  |  |